Kevin J. McInerney, Esq., NYS#KM0163
Charles A. Jones, Esq., 224915
McInerney and Jones
18124 Wedge Parkway, Suite 503
Reno, NV 89511
Telephone: (775) 849-3811
Facsimile: (775) 849-3866

Michael Shen, Esq., MS5714
1085 Cambridge Road
Teaneck, NJ 07666
Telephone: (201) 287-1111

Jeffrey D'Onofrio, Esq., CT07738
Ciulla & Donofrio
127 Washington Ave.
North Haven, CT 06473
Telephone: (203) 239-9828
Facsimile: (203) 234-0379

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH GLASS, DANTE DiFRANCESCO, RALPH CARBONE and DAVID BACHRACH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UBS FINANCIAL SERVICES INC., a corporation; UBS PAINE WEBBER, a corporation; and PAINE WEBBER GROUP INC., a corporation,<br><br>Defendants. | Civil: _____<br><br>Related to <u>Bowman v. UBS</u> (N.D. Cal.) Case No. 04-03525 MMC<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT FOR:**<br><br>(1) Recovery of Overtime Compensation for Commissioned Brokers; and<br>(2) Recovery for Improper Wage Deductions; |

**THIS IS A CLASS ACTION LAWSUIT**

Plaintiffs, individually and on behalf of all others similarly situated, complain and allege as follows:

1. This is a national class and national collective action brought on behalf of all

---

CLASS ACTION COMPLAINT                                                              PAGE 1

persons who, at any time during the during the applicable statute of limitations are or were employed as stock brokers at any of the brokerage offices of UBS Financial Services Inc. or its predecessors, UBS Paine Webber and Paine Webber Group Inc. in the United States or its territories. However, this action specifically excludes persons who were so employed in California since those individuals are included in a proposed settlement before this Court in Case No. 04-03525 (MMC).

## I.

## JURISDICTION AND VENUE

2.  This action arises under the Labor Laws of the United States. This Court also has jurisdiction in this action pursuant to 28 U.S.C. §1711, et seq. because claims in this action exceed $5,000,000 exclusive of interests and costs. UBS Financial Services Inc. is a Delaware corporation and the named plaintiffs are citizens of other states.

3.  Pursuant to pursuant to 28 U.S.C. 1391, venue is proper in the Northern District of California because the Defendant UBS Financial Services Inc. operates numerous offices in this District. Additionally, this action is related to Bowman v UBS Financial Services, Inc. (Case No. 04-03525), currently pending in this District.

## II.

## PARTIES

4.  The Defendant UBS Financial Services Inc. is a Delaware corporation. During the past several years, UBS has operated stock brokerage offices throughout the nation that sell financial securities, stocks and other financial investments.

5.  The Defendant Paine Webber Group, Inc. owned and operated stock brokerage

offices throughout the United States for many years. In approximately November of 2000, this entity merged into UBS, an international banking entity. The brokerage arm of the merged companies emerged as the Defendant UBS Paine Webber. Later, the "Paine Webber" was dropped from its name and the resulting entity was the Defendant UBS Financial Services Inc. UBS Financial Services Inc. is, therefore, the surviving legal entity and is the legal successor in liability of Paine Webber Group, Inc. and UBS Paine Webber. In this complaint all three entities will be referred to jointly as "UBS."

6. At all times, the wage and hour and all related employee compensation policies of Defendants' offices throughout the United States are and were dictated by, controlled by, and ratified by the Defendants.

7. The Plaintiff Joseph Glass is a former employee of Defendants. He began working at a UBS branch in New Jersey in approximately November 2002.

8. The Plaintiff Dante DiFrancesco is a former employee of Defendants. He began working at a Paine Webber office in New York State as a stock broker in 1998. He then transitioned into UBS Paine Webber after the merger and then remained with UBS Financial Services Inc. after the name change.

9. The Plaintiff Ralph Carbone is a former employee of Defendants. He began working for UBS in Connecticut in approximately November 2000. Each of the three named Plaintiffs worked for UBS in the capacity of a stock broker.

10. The Plaintiff David Bachrach is a former employee of the Defendants. He was employed in the Hackensack, New Jersey between December 2000 and August 2003.

11. The named Plaintiffs and every other broker at UBS were routinely required to work in excess of forty (40) hours per week without receiving overtime compensation. The named Plaintiffs and every other broker at UBS had sales of financial products, including

securities and stocks, as their primary duty and were compensated almost exclusively on the basis of commissions earned by the sales of such financial products.

12. Plaintiffs bring this action on their own behalf and on behalf of all other such current and former employees similarly situated.

### III.

### FACTUAL ALLEGATIONS

13. This is a class and collective action brought on behalf of all persons who were improperly classified as exempt employees to recover overtime due to them under the Fair Labor Standards Act (FLSA) and the labor statutes and regulations of the states and territories of the United States. These persons include current and former stock brokers and broker trainees employed at the Defendants locations nationwide. Employment in the state of California is, however, excluded.

14. The typical UBS office has been staffed by a manager, a number of experienced brokers, trainee brokers, and administrative assistants and support staff.

15. Throughout this complaint, the term "broker" refers to licensed security brokers employed who received more than half their compensation in the form of commissions.

16. Pursuant to Defendants' uniform employment policies, brokers were classified as "exempt" and paid fixed commissions, irrespective of the hours they actually worked. During the class period, brokers and broker trainees have consistently worked considerably more than 40 hours per week.

17. The duties of the brokers and broker trainees have been set forth in uniform written company-wide policies and procedures promulgated by the Defendants.

18. Plaintiffs and all other broker class members are inside salespeople who are and were paid primarily on a commission basis. They have received no overtime pay as required by

law. Their primary duty has been the sale of financial products such as stocks. Stocks are intended for resale and, therefore, lack the retail notion required for exemption.

19. The Plaintiffs and other broker class members are not administratively exempt because they do not meet the salary basis test and because their primary duty is the sale of securities.

20. Some evidence generally reflecting the number of overtime hours worked by each class member and the compensation rates for the relevant work periods is in the possession of UBS. While Plaintiffs are unable to state at this time the exact amount owing to the class, Plaintiffs propose to obtain such information by appropriate and focused discovery proceedings to be taken promptly in this action, and request that damages or restitution be awarded according to proof thus obtained and presented to the court. When an employer fails to keep time records, employees may establish the hours worked solely by their testimony and the burden of overcoming such testimony shifts to the employer. Anderson v. Mt. Clemens Pottery Co. (1946) 328 U.S. 680.

## IV.

## CLASS ACTION ALLEGATIONS

21. Plaintiffs bring this action individually and as a class action on behalf of the following class: All persons employed as a commissioned broker in states and territories of the United States (excluding California) by Paine Webber Group, Inc., UBS Paine Webber and/or UBS Financial Services Inc.

22. Plaintiffs' claims are typical of the claims of the class because Plaintiffs and all the class members were harmed by Defendants' failure to pay overtime. Defendants' policies with respect to the hours worked and deductions made are and were uniform throughout the nation and

the locations are and were operated under uniform written procedures.

23. Plaintiffs are representative parties who will fully and adequately protect the interests of the class members. They have retained counsel who are competent in both class action and employment litigation. Plaintiffs have no interests which are contrary to or in conflict with those of the class they seek to represent.

24. The number of members in the class is believed to exceed one thousand (1,000) individuals, which makes it impractical to bring all members of the class individually before the Court, and the identities of the members of the class are determinable from the records of the Defendants, as are the days worked and the pay for each class member.

25. A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even if any class member could afford individual litigation against large business like the Defendants', it would be unduly burdensome to the justice system. Individual litigation magnifies the delay and expense to all parties. By contrast, a class action presents far fewer management difficulties and affords the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court. Concentrating this litigation in one forum will promote judicial economy and parity among the claims of individual class members and judicial consistency. Notice of the pendency and any resolution of this action can be provided to class members by mail, print, and/or internet publication.

26. This type of case is uniquely well suited for class treatment since the employers' practices were uniform and the burden is on the employer to prove any exemption.

27. Many issues of law or fact are common and they predominate over any individual questions. These common issues include:

    a. Whether Defendants' commissioned brokers were uniformly classified as exempt, in violation of the FLSA and/or state law;

b.  Whether Defendants failed to pay Plaintiffs and class members all overtime compensation due to them by virtue of their uniform designation of employees as exempt;

c.  Whether Plaintiffs and class members were expected to and/or mandated to regularly work overtime;

d.  Whether the types of deductions routinely made from wages by the Defendants were legal;

e.  The correct statute of limitations for Plaintiffs' and class members' claims;

f.  The correct method of calculating back overtime pay; and

g.  Whether Plaintiffs and class members are entitled to compensatory damages, and if so, the means of measuring such damages.

## V.

### FIRST CAUSE OF ACTION

**Failure to Pay Overtime Wages to Commissioned Brokers**

**(Violation of the Fair Labor Standards Act)**

27.  Plaintiffs hereby reallege and incorporate by reference all the factual allegations paragraphs above as though fully set in detail.

28.  Plaintiffs bring this claim pursuant to 29 U.S.C. § 216(b) on behalf of thousands and all other similarly situated persons, if any, who consent in writing to join this action.

29.  The Defendants failed to pay numerous other persons, who performed work for the Defendants and who are similarly situated to Plaintiffs, the compensation required by the FLSA (29 U.S.C. §§206, 207) for the work, labor and services they provided to the Defendants, and Plaintiff seeks to take appropriate proceedings to have such persons notified of the pendency of this action and join this action as plaintiffs pursuant to 29 U.S.C. § 216(b) by filing written consents to joinder with the Court.

30.  As a result of the foregoing, Plaintiffs seek judgment against the Defendant on their own behalf and on behalf of those similarly situated who file written consents to joinder in

this action, declaratory relief finding that the practices complained of herein are illegal, and injunctive relief to correct the illegal practices complained of herein, monetary damages in the amount of all unpaid overtime wages and/or other wages owed by the Defendants to the Plaintiffs and such other persons similarly situated pursuant to 29 U.S.C. §§206, 207, together with an award of an additional equal amount as liquidated damages, costs, interest, and attorney's fees, as provided for under 29 U.S.C. § 216(b).

## VI.

## SECOND CAUSE OF ACTION

### Failure to Pay Overtime Wages to Commissioned Brokers

(Violation of NJSA 34:11-56a thru 56a30)

31. Plaintiff Glass hereby realleges and incorporates by reference all paragraphs above as though fully set forth in detail herein.

32. Unless proven to be exempt for the protection of overtime laws, all employees are entitled to overtime for hours worked in excess of 40 in a week pursuant to NJSA 34:11-56a thru 56a30.

33. Stock brokers compensated on a commission basis are not otherwise exempt from the requirement of overtime premium pay.

34. Defendant's brokers do not meet any of the other exemptions from overtime such as the administrative exemption. Their brokers are not administratively exempt because they are production workers and their primary duty does not consist of the performance of office or nonmanual field work directly related to management policies or general operations of such individual's employer.

35.     The Defendant's commissioned brokers fail to meet the salary basis test for the administrative exemption. Although some stock brokers receive a draw against commissions, this is a loan and not a salary.

36.     Lastly, brokers are subject to deductions by the employer for incorrect trades or other matters pertaining to the quantity or quality of the work performed and such deductions destroy a claim to exemption.

37.     As no exemptions under New Jersey overtime laws apply, Plaintiff hereby demands, pursuant to Rule 23(b)(3) of the FRCP, that he and every other broker be compensated under New York Labor Law for every hour of overtime worked in excess of forty per week at any time during the two years preceding the filing of this complaint as well as the recovery of attorney fees and costs and prejudgment interest. Furthermore, since full wages were not timely paid to UBS brokers who left the Defendant's employ the Defendant is liable to the Plaintiff and other class members pursuant to NJSA 34:11-4.3.

## VII.

## THIRD CAUSE OF ACTION

### Failure to Pay Overtime Wages to Commissioned Brokers

### (Violation of NYCRR §142-2.2)

38.     Plaintiff DiFrancesco hereby realleges and incorporate by reference all the factual allegations paragraphs above as though fully set forth in detail herein.

39.     Unless proven to be exempt for the protection of overtime laws, all employees are entitled to overtime for hours worked in excess of 40 in a week.

40.     NYCRR §142-2.2 provides:
An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods

provided in and subject to the exemptions of Section 7 and 13 of 29 U.S.C. 201 et seq., the Fair Labor Standards Act of 1938, as amended; provided, however, that the exemptions set forth in Section 13 (a)(2) and (4) shall not apply. In addition, an employer shall pay employees subject to the exemptions of Section 13 of the Fair Labor Standards Act, as amended, except employees subject to Section 13(a)(2) and (4) of such act, overtime at a wage rate of one and one-half time the basic minimum hourly rate.

41. Stock or securities brokers compensated primarily on a commission basis are not otherwise exempt from the requirement of overtime premium pay.

42. Likewise, since 25% of the revenue of the UBS comes from locations outside New York State, it is not a retail business as that term is construed by the applicable regulations.

43. Defendants' brokers have not met any of the other exemptions from overtime such as the administrative exemption. Their brokers have not been administratively exempt because they are production workers and their primary duty has not consisted of the "performance of office or nonmanual field work directly related to management policies or general operations of such individual's employer, as required by 12 NYCRR §142-2.14.

44. The Defendants' commissioned brokers have not met the salary basis test for the administrative exemption. Although some stock brokers receive a draw against commissions, this is a loan and not a salary.

45. Lastly, the brokers have been subject to deductions by the Defendants for incorrect trades or other matters pertaining to the quantity or quality of the work performed and such deductions destroy a claim to exemption.

46. As no exemptions under New York overtime laws apply, Plaintiff hereby demands, pursuant to Rule 23(b)(3) of the FRCP, that he and every other broker be compensated under New York Labor Law for every hour of overtime worked in excess of forty per week at any time during the six years preceding the filing of this complaint as provided by New York law.

## VIII.

## FOURTH CAUSE OF ACTION

### Failure to Pay Overtime Wages to Commissioned Brokers

### (Violation of Conn. General Statutes)

47. Plaintiff Ralph Carbone hereby realleges and incorporates by reference all the factual allegations paragraphs above as though fully set forth in detail herein.

48. Unless proven to be exempt for the protection of overtime laws, all employees are entitled to overtime for hours worked in excess of 40 in a week under Connecticut General Statutes 31-76.

49. Stock or securities brokers are inside sales personnel compensated primarily on a commission basis and are not otherwise exempt from the requirement of overtime premium pay.

50. Likewise, since 25% of the revenue of the UBS comes from locations outside Connecticut, it is not a retail business as that term is construed by the applicable regulations.

51. Defendants' brokers have not met any of the other exemptions from overtime such as the administrative exemption. Its brokers have not been administratively exempt because they are production workers and their primary duty has not consisted of the "performance of office or nonmanual field work directly related to management policies or general operations of such individual's employer, as required by Conn. Gen. Statues 37-60 and Regs. Conn. State Agencies §31-60-15.

52. The Defendants' commissioned brokers have not met the salary basis test for the administrative exemption. Although some stock brokers receive a draw against commissions, this is a loan and not a salary.

53. Lastly, the brokers have been subject to deductions by the Defendants for incorrect trades or other matters pertaining to the quantity or quality of the work performed and such

deductions destroy a claim to exemption.

54. In failing to pay overtime and in making improper wage deductions the Defendants acted arbitrarily, not in good faith, and in reckless disregard of state law and regulations.

55. As no exemptions under Connecticut overtime laws apply, Plaintiff hereby demands, pursuant to Rule 23(b)(3) of the FRCP, that he and every other broker be compensated under Connecticut law for every hour of overtime worked in excess of forty per week at any time during the three years preceding the filing of this complaint and double damages as well as the recovery of attorney fees and costs and prejudgment interest as provided by Connecticut law.

## IX.

## FIFTH CAUSE OF ACTION

**Impermissible Deductions from Employees' Wages**

**(Violation of NJSA 34:11 – 4.4)**

56. Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth in detail herein.

57. Throughout the past several years UBS has routinely deducted numerous charges from the wages of its commissioned brokers, including but not limited to the following:

    a. Monies to pay administrative assistants and support staff;

    b. Account maintenance fees when those fees were not timely paid by the customer;

    c. Commissions when a customer asserted a trade was made improperly or incorrectly.

58. The deductions made by UBS have violated NJSA 34:11 – 4.4 because they were not for the benefit of the employee and because they are not otherwise of a nature allowed under the statute. Furthermore, they were made without the written consent of the employee.

59. As a result, Plaintiffs seek restitution of all improper deductions on behalf of themselves and all other brokers similarly situated under New Jersey law plus prejudgment interest and attorney fees and costs.

X.

SIXTH CAUSE OF ACTION

Impermissible Deductions from Employees' Wages

(Violation of NY Labor Law §193)

60. Plaintiffs hereby reallege and incorporate by reference all paragraphs above as though fully set forth in detail herein.

61. Throughout the past years the Defendants have routinely deducted numerous charges from the wages of their commissioned brokers, including but not limited to the following:

    a. Monies to pay administrative assistants and support staff;

    b. Account maintenance fees when those fees were not timely paid by the customer;

    c. Commissions when a customer asserted a trade was made improperly or incorrectly.

62. New York Labor Law §193 provides:
Deductions from wages
1. No employer shall make any deduction from the wages of an employee, except deductions which:
    a. are made in accordance with the provisions of any law or any rule or regulation issued by an governmental agency;  or

        b.      are expressly authorized in writing by the employee and are for the benefit of the employee; provided that such authorization is kept on file on the employer's premises. Such authorized deductions shall be limited to payments for insurance premiums, pension or health and welfare benefits, contributions to charitable organizations, payments for United States bonds, payments for dues or assessments to a labor organization, and similar payments for the benefit of the employee.

    2.    No employer shall make any charge against wages, or require an employee to make any payment by separate transaction unless such charge or payment is permitted as a deduction from wages under the provisions of subdivision one of this section.

63. Wages are defined by N.Y. Labor Law §190(1) as "the earnings of an employee for labor or services rendered, regardless whether the amount of earnings is determined on a time, piece, commission or other basis."

64. The deductions made by the Defendants have violated Section 193 because they were not for the benefit of the employee and because they are not otherwise of a nature allowed under the statute. Furthermore, they were made without the written consent of the employee.

65. As a result, Plaintiff seeks restitution of all improper deductions on behalf of himself and all other brokers similarly situated under New York law plus prejudgment interest and attorney fees and costs.

## XI.

## SEVENTH CAUSE OF ACTION

### Impermissible Deductions from Employees' Wages

### (Conn. Gen. Statutes)

66. Plaintiff hereby realleges and incorporates by reference all paragraphs above as though fully set forth in detail herein.

67. Connecticut General Statutes 31-58 defines "wage" as compensation due to an employee by reason of his employment.

68. Throughout the past three years the Defendant has routinely deducted numerous charges from the wages of its commissioned brokers, including but not limited to the following:

    a. Monies to pay administrative assistants and support staff;

    b. Account maintenance fees when those fees were not timely paid by the customer;

    c. Commissions when a customer asserted a trade was made improperly or incorrectly.

69. The deductions made by the Defendant were improper because they were not for the benefit of the employee and because they are not otherwise of a nature allowed under the statute. Furthermore, they were made without the written consent of the employee.

70. As a result, Plaintiff seeks restitution of all improper deductions on behalf of themselves and all other brokers similarly situated under Connecticut law plus prejudgment interest and attorney fees and costs.

## XII.
## PRAYER FOR RELIEF

71. Plaintiffs, individually and on behalf of others similarly situated, pray for relief as follows:

    a. An order directing that the Defendants compensate all commissioned brokers according to law for overtime hours worked;

    b. An order directing that the Defendants compensate all commissioned brokers according to law for monies improperly deducted from their wages;

    c. An order directing that the Defendants pay prejudgment interest;

      d.    An order directing that the Defendants pay reasonable attorney fees and costs; and

      f.    Further orders directing such relief as this Court may deem just and proper.

72.    No penalties (statutory or otherwise), liquidated damages or punitive damages of any kind under New York Law are sought in this action and are expressly waived.

Dated: June 29, 2006

MCINERNEY & JONES

By: _____
Kevin J. McInerney, Esq.