IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH GLASS, et al., | No. C-06-4068 MMC |
| Plaintiffs, | **ORDER DENYING ANTHONY D'ARIA'S MOTION TO INTERVENE; VACATING HEARING** |
| v. | |
| UBS FINANCIAL SERVICES, INC., et al., | (Docket No. 130) |
| Defendants. | |

    Before the Court is class member Anthony D'Aria's ("D'Aria") motion, filed December 15, 2006, to intervene in the instant action, pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure. Plaintiffs and defendants have filed separate oppositions to the motion; D'Aria has filed a reply, and, with the Court's permission, plaintiffs and defendants have filed separate surreplies. Having considered the papers filed in support of and in opposition to the motion, the Court finds the matter appropriate for decision without oral argument, see Civil L.R. 7-1(b), hereby VACATES the January 19, 2006 hearing on the motion, and rules as follows.

**BACKGROUND**

    The instant class action is asserted on behalf of a class consisting of all persons who, at any time during the applicable statute of limitations, are or were employed as stockbrokers at any of the brokerage offices of UBS Financial Services Inc. or its predecessors, UBS Paine Webber and Paine Webber Group Inc., anywhere in the United States or its territories, excluding California. (See Compl. ¶ 1.) On July 28, 2006, the parties filed a joint motion for preliminary approval of a proposed settlement. On August

25, 2006, the Court granted preliminary approval of the settlement and set a fairness hearing for January 19, 2007. Pursuant to the Class Notice, any request to opt out of the settlement and any objections to the settlement were required to be submitted no later than November 14, 2006. (See Class Notice at 7 ¶¶ C and D.)

On October 13, 2006, class member Lawrence Kaufmann ("Kaufmann") filed a motion to intervene in the instant action for purposes of obtaining an order rejecting the proposed settlement, consolidating the instant action with Bowman v. UBS, C-04-3525 MMC, discharging current counsel for the Bowman and Glass plaintiffs, and appointing Kaufmann's counsel to represent the Bowman and Glass classes. On November 14, 2006, Kaufmann withdrew his motion to intervene.

On November 16, 2006, the Court issued an order in which the Court noted Kaufmann's motion contained objections to the proposed settlement, and invited the parties to file memoranda addressing whether Kaufmann should be permitted to withdraw his objections pursuant to Rule 23(e)(4)(B) of the Federal Rules of Civil Procedure.

D'Aria did not file a timely objection to the settlement. Nonetheless, on November 16, 2006, D'Aria filed a motion to substitute himself for Kaufmann and to adopt Kaufmann's motion to intervene. That same date, the Court issued an order denying D'Aria's motion.

On November 17, 2006, the Court held a fairness hearing in the Bowman action and granted final approval of the Bowman settlement.

On December 1, 2006, plaintiff, defendants, and D'Aria filed memoranda addressing whether the Court should permit Kaufmann to withdraw his objections to the proposed settlement. Thereafter, plaintiffs and defendants filed separate motions to strike D'Aria's memorandum; by separate order filed concurrently herewith, the Court has granted those motions.

On December 15, 2006, D'Aria filed the instant motion to intervene in the Glass action.

/ /

**DISCUSSION**

D'Aria seeks leave to intervene as a matter of right, pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure; he does not seek to intervene permissively, pursuant to Rule 24(b). D'Aria contends his interests and the interests of the class have not been adequately represented by plaintiffs and their counsel; he seeks to intervene for the purposes of (1) objecting to the proposed settlement; (2) replacing plaintiffs' counsel with his own counsel or, alternatively, appointing his own counsel as co-counsel with plaintiffs' current counsel; (3) obtaining discovery as to "the circumstances under which the Glass action was prosecuted and settled" and the circumstances under which Kaufmann withdrew his objection and motion to intervene; and (4) litigating the action to trial or attempting to negotiate a new settlement.

**A. Intervention As Matter Of Right**

"Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." See Fed. R. Civ. P. 24(a). Where, as here, the applicant seeks to intervene as of right, and in the absence of a federal statute conferring an unconditional right to intervene, the applicant must "demonstrate that (1) [he] has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect [his] interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." See United States v. Alisal Water Corporation, 370 F.3d 915, 919 (9th Cir. 2004) (internal quotation and citation omitted). "The party seeking to intervene bears the burden of showing that all the requirements for intervention have been met." Id. (emphasis in original).

3

**1. Significant Protectable Interest Related to Subject of Action**

"An applicant for intervention has a significantly protectable interest if the interest is protected by law and there is a relationship between the legally protected interest and the plaintiff's claims." See Alisal, 370 F.3d at 919. "An applicant generally satisfies the 'relationship' requirement only if the resolution of the plaintiff's claims actually will affect the applicant." Donnelly v Glickman, 159 F.3d 405, 410 (9th Cir. 1998).

As D'Aria is a member of the Glass class, he has a significant protectable interest relating to the subject of the instant action. See, e.g., In re Community Bank of Northern Virginia Mortgage Loan Litigation, 418 F.3d 277, 314 (3d Cir. 2005) (finding when unnamed class member seeks to intervene in class action, significant protectable interest factor "is satisfied by the very nature of class action litigation"). No argument to the contrary has been submitted.

Accordingly, the Court finds D'Aria has demonstrated a significant protectable interest in the instant litigation.

**2. Impairment of Applicant's Ability to Protect His Interest**

The next issue is whether "the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect [his] interest." See Alisal, 370 F.3d at 919.

Defendants argue that D'Aria's interests will not be impaired as a result of the instant settlement because D'Aria was free to opt out of the settlement and to assert, by means of a separate action, any claims he wished to pursue against defendants. See, e.g., Hawaii-Pacific Venture Capital Corp. v. Rothbard, 564 F.2d 1343, 1346 (9th Cir. 1977). In Hawaii-Pacific, the Ninth Circuit affirmed the district court's denial of a motion to intervene because, inter alia, the moving class members, who had not received notice of the settlement and arguably were not bound thereby, could "pursue[ ] their individual claims in independent actions" and thus did not "sustain[ ] their burden of proving impairment or impediment to their ability to protect their interest." See id.

Here, however, D'Aria received timely notice of the proposed settlement, D'Aria has

not opted out, and the November 14, 2006 deadline to opt out of the settlement has passed. Because D'Aria has not opted out of the class settlement, and the deadline to do so has passed, the Court finds D'Aria has demonstrated the disposition of the instant action may impair or impede his ability to protect his interest in the claims constituting the subject of the instant litigation.[1]

### 3. Timeliness

The third factor, as noted, is whether the motion to intervene is timely. See Alisal, 370 F.3d at 919. Timeliness "is a flexible concept"; "[a]lthough delay can strongly weigh against intervention, the mere lapse of time, without more, is not necessarily a bar to intervention." See id. at 921. Generally, in determining whether a motion to intervene is timely, courts weigh the following factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to the other parties; and (3) the reason for and length of the delay." See id. Where a proposed intervenor seeks to intervene for purposes of objecting to a proposed settlement, timeliness generally is measured from the date the proposed intervenor received notice that the proposed settlement was contrary to its interest. See United States v. Carpenter, 298 F.3d 1122, 1125 (9th Cir. 2002) (finding motion to intervene timely where proposed intervenors "acted as soon as they had notice that the proposed settlement was contrary to their interests"); see also Community Bank, 418 F.3d at 314 (finding motion to intervene "presumptively timely" where filed before deadline to opt out of class settlement).

Here, notice of the proposed settlement was mailed to class members on September

---

[1] Moreover, as D'Aria observes, the Ninth Circuit has stated, albeit in a footnote, that where a motion to intervene is timely, a class member "should have the right to intervene in a class action if he can show the inadequacy of the representation of his interest by the representative parties before the court," thus suggesting that members of a class, by their very nature, meet the first two requirements for intervention as a matter of right. See Diaz v. Trust Territory of the Pacific Islands, 876 F.2d 1401, 1405 n.1 (9th Cir. 1989) (internal quotation and citation omitted); see also Community Bank, 418 F.3d at 314 (holding when class members "seek intervention as a matter of right, the gravamen of a court's analysis must be on the timeliness of the motion to intervene and on the adequacy of representation," because the "interest" and "impairment" requirements of Rule 24(a)(2) "are satisfied by the very nature of Rule 23 representative litigation"). The Court considers the question of timeliness infra.

15, 2006. (See Holland Decl. ¶ 7.) On September 22, 2006, D'Aria signed a "Consent to Join Settlement" form, by which he "consent[ed] to be a party plaintiff" in the instant action and "authorize[d] Class Counsel to act on his . . . behalf in all matters relating to this action, including the settlement of his . . . claims"; he also submitted a claim form, seeking his share of the settlement proceeds. (See McInerney Decl. Exs. 1 and 2.) D'Aria attests that "beginning in early to mid-September, 2006, and continuing in October, 2006," he had discussions with his counsel about the instant action and the proposed settlement. (See D'Aria Decl. ¶ 3.) Although D'Aria thus concedes he was notified of the proposed settlement and discussed it with counsel, he nonetheless failed to file an objection to the settlement prior to the November 14, 2006 deadline. The instant motion to intervene was filed December 15, 2006, more than a month after the deadline for class members to opt out of the settlement.

### a. First Factor

The first factor in the timeliness analysis is "the stage of the proceeding at which an applicant seeks to intervene." See Alisal, 370 F.3d at 921. The Ninth Circuit has held that a proposed intervenor is not necessarily untimely merely because the motion to intervene is filed after a significant amount of time and effort has been expended in accomplishing a settlement. See Carpenter, 298 F.3d at 1125 (holding motion to intervene timely where proposed intervenors filed "as soon as they had notice" of settlement's terms).

Here, however, D'Aria concedes he received timely notice of the proposed settlement yet failed to file a timely objection thereto. Rather, as noted, he submitted, on September 22, 2006, a "Consent to Join Settlement" form, as well as a claim for his share of the settlement proceeds. (See McInerney Decl. Exs. 1 and 2.) Indeed, after receiving notice of the settlement, D'Aria waited nearly three months before moving to intervene, until the last possible date, resulting in his motion being heard on the same date as the final fairness hearing.

The primary purpose of the Court's setting a deadline for class members to file objections to a proposed settlement is to avoid the disruption caused by motions such as

the instant motion to intervene. Accordingly, the Court finds the stage of the proceedings at which D'Aria seeks to intervene weighs against a finding of timeliness.

### b. Second Factor

As noted, the second factor in the timeliness analysis is "the prejudice to the other parties." See Alisal, 370 F.3d at 921. Here, as plaintiffs correctly point out, D'Aria's intervention and the subsequent reopening of the litigation "could be disastrous to the [class member] brokers," because a recently issued Opinion Letter by the Department of Labor casts significant doubt on the strength of their claims. (See Plaintiffs' Opp. at 15.)

Plaintiffs in the instant action seek recovery of overtime pay and assertedly improper wage deductions on behalf of a class of stockbrokers, under the federal Fair Labor Standards Act ("FLSA") and state law. The FLSA contains various exceptions to its requirement that employers pay their employees time and a half for work in excess of 40 hours per week, including, in particular, an exemption for "any employee employed in a bona fide . . . administrative . . . capacity." See In re Farmers Insurance Exchange, 466 F.3d 853, 858-59 (9th Cir. 2006); see also 29 U.S.C. § 213(a)(1). On November 27, 2006, months after the proposed Glass settlement was negotiated, the Department of Labor issued an Opinion Letter stating stockbrokers meet the requirements of the "administrative exemption" to the FLSA and, thus, are not entitled to overtime under the FLSA. (See McInerney Decl. Ex. 9 at 8.) Courts "must give deference to the DOL's interpretation of its own regulations through, for example, Opinion Letters." See Farmers, 466 F.3d at 860.

As a result of the issuance of the November 27, 2006 Opinion Letter, plaintiffs' federal overtime claims are significantly weakened. It is likely that plaintiffs' state law overtime claims will be similarly impacted. See, e.g., Franklin v. Breton Int'l, Inc., 2006 WL 3591949 at *4 (S.D.N.Y. 2006) (holding that because plaintiff therein was "an exempt employee under the FLSA, he [was] also exempt under the overtime requirements of the New York" law).

Consequently, if the motion to intervene were granted, plaintiffs and the other class members are likely to be significantly prejudiced by having to either litigate their overtime

claims, or attempt to negotiate a new settlement thereof, in the context of the Department of Labor's recent Opinion Letter.

Accordingly, the Court finds the prejudice resulting to other class members if D'Aria were permitted to intervene weighs against a finding that D'Aria's motion to intervene is timely.

### c. Third Factor

The Court next turns to the third factor in the timeliness analysis, "the reason for and length of the delay." See Alisal, 370 F.3d at 921.

D'Aria submits no evidence with respect to the reason he did not seek to intervene before the deadline had passed for class members to object to the proposed settlement. D'Aria attests only that when he learned Kaufmann had withdrawn, he authorized counsel "to challenge the adequacy of the settlements on [D'Aria's] behalf and to put him forward in place of" Kaufmann. (See D'Aria Decl. ¶ 4.) In his motion to intervene, D'Aria argues that UBS and Kaufmann deliberately delayed providing notification of Kaufmann's withdrawal of his motion to intervene until it was too late for other class members to file their own objections to the proposed settlement. D'Aria relies on Kaufmann's declaration, in which Kaufmann states he reached a settlement with UBS on November 7, 2006, a week before Kaufmann provided notice to the Court of such settlement. (See Kaufmann Decl., filed November 15, 2006, ¶ 5.) There is no evidence, however, that UBS conspired with Kaufmann to delay announcement of Kaufmann's withdrawal of his motion.

Moreover, D'Aria submits no evidence that he relied on Kaufmann to object on his behalf, or that he would have filed his own objection had Kaufmann not moved to intervene. In any event, nothing precluded D'Aria from filing his own timely objection to the proposed settlement. Indeed, other class members filed timely objections. Accordingly, the Court finds D'Aria has failed to provide adequate justification for his delay in seeking to intervene.

With respect to the length of the delay, as noted, D'Aria delayed for nearly three months after receiving notice of the settlement, as well as close to a month after the

8

deadline for class members to object to the proposed settlement had passed. "A class member must intervene when he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation." Alisal, 370 F.3d at 923.

Here, D'Aria knew of the settlement, consulted with counsel, and nonetheless failed to object to the settlement in a timely manner. The Class Notice clearly set forth November 14, 2006 as the deadline for submission of objections to the settlement, and expressly provided that any class member who failed to object in the manner set forth in the Class Notice would be "deemed to have waived any objections and [would] be foreclosed from making any objection." (See Class Notice at 7 ¶ C.) D'Aria thus was aware that by failing to object in a timely manner, he was forgoing an opportunity to object to the settlement. D'Aria has offered no adequate support for an order permitting him to evade that deadline by submitting untimely objections to the settlement in the form of a motion to intervene.

Accordingly, the Court finds "the reason for and length of the delay" in seeking intervention weighs against a finding of timeliness.

### d. Conclusion

For the reasons set forth above, the Court finds D'Aria's motion to intervene is untimely and, consequently, that D'Aria has not shown he is entitled to intervene as a matter of right. See Alisal, 370 F.3d at 919 (holding "party seeking to intervene bears the burden of showing that all the requirements for intervention have been met") (emphasis in original).

### 4. Adequacy of Representation

Although D'Aria's motion for intervention as a matter of right fails because he has not demonstrated such motion is timely, the Court nonetheless will continue its analysis of the four-factor test.

The fourth and final factor is whether "the existing parties may not adequately represent the applicant's interest." See Alisal, 370 F.3d at 919. In determining adequacy of representation, the Court considers three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2)

9

whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003).

"The most important factor in determining the adequacy of representation is how the interest compares with the interest of existing parties." Id. "When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." Id. "If the applicant's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation." Id.

Here, D'Aria and the named Glass plaintiffs have the same ultimate objective: obtaining compensation for assertedly unpaid overtime and improper wage deductions. Indeed, D'Aria, in his proposed complaint-in-intervention, expressly adopts "all of the allegations of plaintiffs' complaint in this action except those that relate to the adequacy of the putative class representatives," and alleges no additional substantive causes of action against defendants. (See Proposed Complaint in Intervention ¶ 3.) Thus, D'Aria must make a "compelling showing" of inadequate representation. See Arakaki, 324 F.3d at 1086; see also League of United Latin American Citizens v. Wilson, 131 F.3d 1297, 1306 (9th Cir. 1997) ("When a proposed intervenor has not alleged any substantive disagreement between it and the existing parties to the suit, and instead has vested its claim for intervention entirely upon a disagreement over litigation strategy or legal tactics, courts have been hesitant to accord the applicant full-party status.").

D'Aria argues class counsel is inadequate for the following reasons: (1) the dollar amount of the settlement is too low compared to the actual damages suffered by the class; (2) each class member in the instant action will receive significantly less than the recovery per class member in Bowman; (3) the instant action was settled without any formal discovery, expert analysis, or other formal litigation activity; (4) the attorneys' fees negotiated are too high compared to the time and effort expended; (5) the settlement was negotiated as a "claims made" settlement under which all unclaimed settlement funds and

any portion of the claimed attorneys' fees that are not approved by the Court will revert to UBS; and (6) proper notice was not provided to the class.  (See Motion at 2-3.)  In essence, D'Aria complains that the amount of the settlement is too small, the amount of attorneys' fees sought is too large, and the circulation of the notice was too narrow.

In asserting the amount of the settlement is inadequate, D'Aria sets forth no analysis with respect to the likelihood of success on the merits of the class claims if such claims were tried rather than settled.  See, e.g., Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998) (providing district court must consider, inter alia, "the strength of the plaintiffs' case" in determining whether a settlement is fair, reasonable, and adequate). Although D'Aria contends the Glass plaintiffs suffered between $240 million and $880 million in unpaid overtime,[2] he provides no analysis of the applicability to the class members of the FLSA's administrative exemption.  As discussed above, the Department of Labor recently issued an Opinion Letter stating the administrative exemption applies to stockbrokers and, consequently, that stockbrokers are not entitled to overtime pay under the FLSA.  Because the reasonableness of the settlement depends not only on the claimed amount of damages, but also on a showing of the strength of the plaintiffs' case, and D'Aria fails to provide any analysis on the latter point, his computation of damages fails to provide adequate support for a finding that the amount of the settlement is inadequate.[3]

D'Aria's next contention is that the amount of the settlement is too low when compared with the settlement in Bowman.  There is no evidence, however, that the Bowman and Glass settlements constitute parts of a single settlement, let alone a single settlement pursuant to which settlements funds were allocated to the Bowman class at the

---

[2] The parties estimate the losses at approximately $128 million to $180 million.  (See New York Attorney General Decl. Ex. 1 (Transcript of Aug. 11, 2006 preliminary approval hearing) at 13:1-14:5.)

[3] D'Aria's contention that plaintiffs' counsel did too little to prepare for settlement negotiations adds no further support in the absence of a showing that the settlement amount is inadequate.  Consequently, the Court denies as moot defendants' motion, filed January 11, 2007, to strike  the supplemental declaration of John Halebian as conclusory, in that the opinions challenged thereby concern the subject of adequate preparation.

11

1 expense of the Glass class members. As the Court noted at the Bowman fairness hearing,
2 the Bowman action was settled prior to the filing of any of the actions that ultimately were
3 consolidated in the Glass action, and the amount of the Bowman settlement was unaffected
4 in any way by the later settlement negotiations in the Glass action. (See McInerney Decl.
5 Ex. 3 (Transcript of Nov. 17, 2006 Bowman fairness hearing) at 12:6-24.)

6 Moreover, D'Aria fails to set forth any independent analysis of the Glass class
7 members' likelihood of success on the merits of their claims as compared to that of the
8 Bowman plaintiffs. Rather, D'Aria relies entirely on the analysis set forth in the amicus brief
9 submitted by the Attorney General of the State of New York, in which the Attorney General
10 compared the California law applicable to the Bowman plaintiffs with the New York law
11 applicable to the New York class members in the instant action. When UBS filed a detailed
12 response to the amicus brief, explaining the differences between the two states' laws, the
13 Attorney General filed a reply conceding California's overtime laws are significantly more
14 favorable to plaintiffs than New York's overtime laws. D'Aria presents no argument to the
15 contrary.

16 In arguing the amount of attorneys' fees negotiated reflects inadequate
17 representation, D'Aria fails to recognize that the Ninth Circuit has held 25% of the gross
18 settlement amount to be the benchmark for attorneys' fees awarded under the percentage
19 method. See, e.g., Powers v. Eichen, 229 F.3d 1249, 1256-57 (9th Cir. 2000). Here, the
20 settlement provides for a maximum fee of $11,250,000, which is 25% of the $45 million
21 settlement amount. (See Amended Joint Stipulation of Settlement ¶ 29(a).) Moreover, the
22 Ninth Circuit has held that where, as here, the settlement provides that unclaimed
23 settlement funds revert to the defendant, the district court must award fees as a percentage
24 of the entire fund, or pursuant to the lodestar method, not on the basis of the amount of the
25 fund actually claimed by the class. See Williams v. MGM-Pathe Communications Co., 129
26 F.3d 1026, 1027 (9th Cir. 1997). Consequently, D'Aria has failed to show counsel's claim
27 for a 25% fee award indicates either some impropriety or inadequacy in counsel's
28

representation.[4]

The Court likewise finds unpersuasive D'Aria's contention that plaintiffs' counsel inadequately represented the class by agreeing to a settlement under which any unclaimed settlement funds, or the amount by which attorneys' fees are reduced, will revert to UBS. D'Aria cites no authority holding improper a settlement providing for such reversion of unclaimed or unawarded funds; indeed, there is authority suggesting to the contrary. See, e.g., Williams, 129 F.3d at 1027 (discussing class action settlement without expressing concern as to provision for reversion of unclaimed funds to defendant); Wilson v. Southwest Airlines, Inc., 880 F.2d 807, 816 (5th Cir. 1989) (approving settlement containing provision that unclaimed funds under consent decree would be divided between plaintiffs' counsel and defendant); Herbert Newberg & Alba Conte, 3 Newberg on Class Actions §§ 10:15, 10:17 (4th ed. 2002) (citing cases).[5]

Finally, with respect to notice, D'Aria argues that plaintiffs' counsel "failed to give proper notice to the class by misrepresenting the nature and amount of the proposed settlement, limiting actual notice solely to the last known address of class members, and failing to publish any notice in a widely circulated financial publication likely to be seen by class members." (See Motion to Intervene at 3:19-22.) D'Aria does not identify the asserted misrepresentations, and the Court is aware of none. Nor does D'Aria submit evidence supporting his assertion as to the use of addresses. By contrast, plaintiffs' counsel attests "notice was not limited to the last known address of class members; instead, the claims administrator did address updated searches and re-mails." (See McInerney Decl. ¶ 14; see also Holland Decl. ¶¶ 8-9.) Finally, plaintiffs' counsel attests he

---

[4] The Court, of course, ultimately will determine whether the amount claimed should be awarded.

[5] See also Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301 (9th Cir. 1990) (holding unclaimed amount of class action judgment against defendant may be returned to defendant "when deterrence is not a goal of the statute or is not required by the circumstances"); In re Microsoft I-V Cases, 135 Cal. App. 4th 706, 721 (2006) (noting, under California law, "a court approved settlement could properly include a 'reversion of . . . funds to the defendant,' such as the one-third reversion" of unclaimed settlement funds provided for in settlement therein) (citation omitted; ellipsis in original).

"took out a full page advertisement in the Registered Rep," which, he further attests, is a "monthly national publication subscribed to by a large number of brokerage houses, branches and brokers themselves." (See id. ¶ 15 and Ex. 10.) D'Aria submits no evidence to the contrary. Consequently, D'Aria has not shown the notice provided to the class was inadequate.

In sum, D'Aria has failed to demonstrate he "would offer any necessary elements to the proceeding that other parties would neglect." See Arakaki, 324 F.3d at 1086.

Accordingly, for the reasons set forth above, D'Aria has not shown, let alone made a "compelling showing" of, see Arakaki, 324 F.3d at 1086, inadequate representation. Consequently, even if his motion to intervene had been timely, said motion, for this additional reason, will be denied.[6]

## CONCLUSION

For the reasons set forth above, D'Aria's motion to intervene in the instant action is hereby DENIED.

This order terminates Docket No. 130.

**IT IS SO ORDERED.**

Dated: January 17, 2007

MAXINE M. CHESNEY
United States District Judge

---

[6] In light of this ruling, the Court does not reach plaintiffs' argument that D'Aria's counsel engaged in unethical conduct by criticizing the manner in which Kaufmann, his former client, withdrew his motion to intervene in the instant action.

14